JOSEPH B. HOWELL and others, v. CHARLES ROBB.

If the bill state, either directly or by inference, a base line of a fishery, an answer denying that such is the base line, and stating another, and shewing by what authority that was fixed, is responsive.

W. H. was seized of land bordering on the Delaware river, and held and enjoyed a fishery in the said river opposite his said lands as appurtenant thereto. After his death, intestate, the Orphans' Court of the county in which the lands are situated appointed Commissioners to make partition of his real estate among his heirs at law. The Commissioners, in making partition, separated the lands lying contiguous to the river from the fishery, by lines and fixed monuments, and severed and set off the fishery as a separate share of the estate, the line of separation being the usual high water mark. An injunction, which had been granted restraining the owner of the land from building a wall on the said line, was dissolved.

Motion to dissolve injunction, which had been granted on the bill by one of the injunction Masters.

*T. W. Mulford* and *W. L. Dayton* in support of the motion.

*Mr. Jeffers* contra.

On filing the answer, notice was given of a motion to dissolve the injunction. Afterwards, affidavits were taken on the part of the complainants, which Mr. Jeffers offered to read in support of the injunction.

Mr. Dayton opposed the reading of them; and cited *Eden. on Inj.* 117; 1 *John. Ch.* 445; 2 *Ib.* 204.

THE CHANCELLOR said they could not be read.

The facts in this case will sufficiently appear in the opinion delivered by the court.

THE CHANCELLOR.     The bill states, that the complainants are seized of three-fifths of the Hugg fishery, and that the defendant is seized of two-fifths thereof; and that the parties in interest appointed Philip Gray, John R. Cowperthwaite and Isaac Reeves, referees, to set off the share of the defendant by marks and measurements. That the referees made partition, setting off by metes and bounds two-fifths of the said fishery to the defendant

and three-fifths thereof to the complainants ; the part allotted to the defendant beginning at what the surveyors of the parties called " the upper stone," above Sykes's wharf, and running south, along the base line of said fishery, 229 feet, to the lower edge of said Sykes's wharf, to a stake driven into a decayed log of said wharf; thence down the river, along said base line, 547 feet to a large " pebble stone" in or about the line of the usual high water mark ; and allotted to the complainants the remaining river front, or fishing right of said fishery, beginning at the south side of the said " pebble stone," and running down the river along the base line of said fishery.

That the defendant has converted his part of the shore of the said fishery into town lots fronting on the river, and has erected a stone wall along the shore, below high water mark, in front of the fishery, and below the large " pebble stone," (i. e. down stream from the large " pebble stone,") in front of the fishery allotted to the complainants, and threatens to continue it.

That said wall, if continued, will destroy the complainants' fishery ; that the tide will wash up against said wall, and it will be impossible to make a high water haul in said fishery, which is the most important haul.

The bill prayed an injunction against further erecting the wall, and it was granted.

The answer states, that the complainants hold their right in the said Hugg fishery under Wm. Hugg, the elder, and that the defendant holds his land or town lots under the same Wm. Hugg. That said Wm. Hugg died intestate, seized of the said land or town lots, and held, used and enjoyed the said fishery as appurtenant thereto. That after his death the Orphans' Court of Gloucester appointed Michael C. Fisher, Wm. Sharp and Aaron Wood to make partition of his real estate among his heirs at law. That the said commissioners made such partition, and thereby caused the lands lying contiguous to the river to be separated from the said Hugg fishery, by lines, fixed monuments and permanent land marks, and did not bound said lands by the river, or any part thereof; which lines so fixed by the said commissioners now form the westerly boundary of the land or town lots of the defendant ; within which the said stone wall has been erected.

That the said commissioners, in making the said partition, severed the said fishery, and set off the same as a distinct and separate share of the estate of said Wm. Hugg; that the westerly lines and boundaries of his land remain the same as when fixed by the said commissioners.

That Gray, Cowperthwaite and Reeves were not appointed for the purpose of fixing the easterly line of said Hugg fishery, and did not fix the same in their partition; but that they were appointed solely to set off two-fifths of the length of said fishery to the defendant, and three-fifths of the length to the complainants; and that for that purpose, and no other, they caused the large "pebble stone," mentioned in the bill, to be placed at a certain point on the shore, in about the line of the usual high water mark.

That he, the defendant, is seized of a large tract of land lying adjacent to the shore of the Delaware river, and in front of the said Hugg fishery, of the value, as he believes, of $100,000, and daily increasing in value by reason of the great improvements now being made upon and near the same. That the current of the river sets strongly against the shore where his said land binds on the river, and that a wall is necessary to prevent its being washed away. That within a few years the water has made such encroachments upon his land that large trees that were marked as monuments to show his boundary line, and also large trees standing and growing within the line of and on his land, have been washed up and thrown down by the action of the current. That the wall, although erected along the shore, at about high water mark, is not, nor is any part of it, upon the said fishery; but that the same and every part of it is on his land and within the lines bounding the same. He admits he has erected a stone wall of about 100 yards in length, and about 3 or 4 feet high, and that it was his intention to continue such wall along the whole river front of his land; but he says the wall is placed at about the usual or average high water mark; that though sometimes the tide rises up to and washes it, at other times the tide at high water does not reach it; and that he is informed and believes that it will not prevent the complainants from making their high water haul at any usual or ordinary high tide.

The bill goes upon the base line of the fishery, without stating distinctly what that is. It might be inferred from the bill that the commissioners to divide the fishery between the defendant and the complainants fixed the base line of the fishery, and that the wall erected by the defendant is outside of that line ; or the bill may mean that high water mark is the base line of the fishery, and that the wall erected is below high water mark. No reference is made in the bill to the partition made by the commissioners appointed by the Orphans' Court of Gloucester to divide the real estate of Wm. Hugg, the elder, deceased; which commissioners separated the fishery from the upland along the shore, by separate boundaries. The answer sets out that partition, and states that the wall erected is inside, i. e. on the land side of the line fixed by it, separating the fishery from the upland. And there is nothing in the bill inconsistent with this idea.

The commissioners appointed by the Orphans' Court, and who divided the fishery from the upland, and allotted the fishery as a separate part of the estate of Wm. Hugg, the elder, were the proper persons to fix the line between the fishery and the upland ; and the persons to whom the fishery fell, in that division, took it according to that line. Those commissioners, it would seem, fixed the line at about the usual high water mark ; and from the statements of the bill and answer there is nothing to show that the wall erected by the defendant is outside, i. e., on the river side of that line. The bill says it is below high water mark. What high water mark is meant? The usual high water mark, or the line to which the water sometimes rises ?

The commissioners to divide the fishery from the upland, no doubt, fixed what they understood to be the ordinary high water mark, or a line which would give the fishery its proper rights. And the answer says the wall is within the line fixed by them.

It was objected on the argument, that that part of the answer which sets out the partition made by the commissioners to divide the real estate of Wm. Hugg, the elder, and which separated the upland from the fishery, was new matter, not responsive to the bill. It does not so appear to me. The bill stating, either directly or by inference, a base line of the fishery, it seems to me

that the answer, denying that such is the base line, and stating another, and showing by what authority that was fixed, is clearly responsive.

On the facts stated in the answer, the injunction will be dissolved.

Order accordingly.